954 P.2d 1120 (1998)
1998 MT 28
In re J.J.G., a Youth in Need of Care.
No. 97-233.
Supreme Court of Montana.
Submitted on Briefs December 18, 1997.
Decided February 12, 1998.
Rehearing Denied March 26, 1998.
*1121 David L. Irving, Glasgow (on behalf of Thompsons), for Appellants.
Joseph P. Mazurek, Attorney General, Tammy K. Plubell, Assistant Attorney General, Helena, Ed Amestoy, Phillips County Attorney, Jack Jenks, Deputy County Attorney, Malta, for Respondent.
James Spangelo (on behalf of J.J.G.), Havre, for Youth.
TRIEWEILER, Justice.
¶ 1 Rick and Colleen Thompson filed a petition in the District Court for the Seventeenth Judicial District in Phillips County for permanent legal custody of J.J.G., a youth in need of care. The District Court dismissed their petition and awarded custody with the right to consent to adoption to the Department of Family Services. The Thompsons appeal. We affirm the order of the District Court.
¶ 2 There are three issues on appeal:
¶ 3 1. Did the District Court err when it dismissed the Thompsons' petition for permanent legal custody?
¶ 4 2. Did the District Court err when it awarded permanent legal custody of J.J.G. with the right to consent to adoption to the Department of Family Services?
¶ 5 3. Did the District Court err when it adopted verbatim the Department of Family Services's proposed orders?

*1122 FACTUAL BACKGROUND
¶ 6 J.J.G. was born on June 29, 1990. His mother was developmentally disabled and had a history of alcohol abuse, and the attending physician at J.J.G.'s birth concluded that J.J.G. suffered from fetal alcohol syndrome. Due to its concerns regarding the mother's ability to care for J.J.G., on July 5, 1990, the Montana Department of Family Services (DFS) placed J.J.G. with foster parents Rick and Colleen Thompson in Glasgow.
¶ 7 On August 2, 1990, the District Court granted the DFS temporary investigative and protective services authority, after it concluded that there was probable cause that J.J.G. was abused or neglected pursuant to § 41-3-102, MCA. At that time, a guardian ad litem and separate attorney were appointed for the child. Thereafter, the DFS prepared a report to the District Court in which it indicated that the mother's adoptive brother and sister-in-law, Martin and Loreen Scholler, had volunteered to care for J.J.G. and the mother while the mother underwent treatment for her abuse and took part in parenting education. The Schollers lived in Washington state and were also approved foster parents.
¶ 8 In January 1992, the District Court declared that J.J.G. was a youth in need of care and transferred legal custody to the DFS pursuant to § 41-3-406(1)(c)(1), MCA. The DFS removed J.J.G. from the Thompsons' home, and both the child and the mother moved to Washington to live with the Schollers. Although the mother has since left the Schollers' home, J.J.G. has, up to the present, lived with and remained in the custody of the Schollers.
¶ 9 In January 1993, the DFS petitioned the District Court to terminate the mother's (and natural father's) parental rights and to grant permanent legal custody of J.J.G. to the DFS with the right to consent to adoption. On February 10, 1993, the Thompsons also filed a petition for permanent legal custody. The District Court dismissed the Thompsons' petition. This Court, however, held on appeal that the Thompsons could petition for permanent custody, and also ordered that the District Court order a mental and psychological evaluation of J.J.G., in accordance with an earlier motion by the Thompsons. See In re J.J.G. (1994), 266 Mont. 274, 880 P.2d 808.
¶ 10 Throughout his life, the physical, mental, and emotional adjustment of J.J.G. has been a significant subject of concern, and his behavioral and developmental difficulties are well-recognized. For that reason, and due in large part to these proceedings, J.J.G. has undergone numerous evaluations by a variety of child professionals. The Thompsons frequently have requested the District Court to order that the evaluations occur in Montana by the professionals of their designation, even after J.J.G. had moved to Washington. In response to their requests, following remand to the District Court, the District Court ordered that J.J.G. have a mental and psychological evaluation. The DFS moved to delay the evaluations until the District Court could conduct a separate hearing to determine the appropriate professionals to perform the evaluation, and, in December 1994, the Thompsons and the DFS stipulated that a team of evaluators from Montana and Washington, selected by both parties, would evaluate J.J.G. in Washington.
¶ 11 Pursuant to the District Court's order, J.J.G. was evaluated on July 10, 1995, at the University of Washington Medical Center by four child professionals, two of whom had been chosen by the Thompsons and two of whom had been chosen by the DFS. The results of the evaluation, as revealed by each of the four evaluators, showed that J.J.G. was a strong candidate for special education assistance; the two physicians also indicated that he suffered from fetal alcohol syndrome. The results did not address in detail J.J.G.'s custody situation, although a psychologist selected by the Thompsons stated that "his current foster placement appears to be adequate and meeting his needs."
¶ 12 In January 1996, the District Court set a hearing date for March 17, 1996, for the final disposition. After the hearing date had been vacated several times, the District Court scheduled the dispositional hearing on July 30, 1996.
¶ 13 However, counsel for all interested parties, including counsel for the child and the guardian ad litem, appeared and stipulated that a separate bonding evaluation *1123 should occur prior to the final dispositional hearing. On August 12, 1996, the District Court continued the hearing and ordered the bonding evaluation to occur before November 8, 1996, according to the terms of the stipulation.
¶ 14 The bonding evaluation was to address three questions: (1) Has J.J.G. bonded with the Schollers? (2) Does the evaluator have any concerns about J.J.G.'s bonding with the Schollers? (3) If the evaluator has any concerns about J.J.G.'s bonding with the Schollers, or if J.J.G. is not bonded with the Schollers, what is the evaluator's recommendation based on all available information? The evaluation was to occur in Washington, and the evaluator was to have broad discretion in her evaluation. In addition, the Thompsons agreed that if the evaluator recommended the continued placement of J.J.G. with the Schollers, they would withdraw their petition for permanent custody; but, if the recommendation was for placement with the Thompsons, the DFS was still entitled to a hearing.
¶ 15 The bonding evaluation was conducted by Elizabeth Robinson, Ph.D., a clinical psychologist. Her evaluation incorporated a review of many of the previous evaluations of J.J.G., as well as her own substantial contact with J.J.G. and the parties to this case. In her final report of October 24, 1996, she "recommended that [J.J.G.] be allowed to remain with the Schollers and that they be given ongoing assistance." She also strongly recommended that J.J.G. needs to be in long-term therapy to address his behavioral and developmental problems.
¶ 16 Despite the terms of the stipulation, the Thompsons did not withdraw their petition. Instead, on November 14, 1996, they filed a motion to amend the District Court's order of August 12, 1996. Essentially, they requested that the District Court delay the final dispositional hearing, which the District Court had scheduled for December 4-6, 1996, for another year, and that the District Court order psychotherapy for J.J.G. for at least the next year. The basis of their motion was Dr. Robinson's recommendation that J.J.G. needed continuing therapy, as well as their own contention that if the District Court made a final disposition, it would lose authority over the DFS, which they alleged would ignore Dr. Robinson's recommendations. They relied in large part on a follow-up letter from Dr. Robinson, which responded to a letter from the Thompsons seeking clarification of Dr. Robinson's report to the District Court. In response to the motion, the DFS filed a motion to enforce the August 12, 1996, stipulation and order.
¶ 17 On December 6, 1996, the District Court held a hearing to receive evidence regarding the motions and for a final disposition. On February 25, 1997, the District Court issued orders resolving the motions and an order of disposition. It denied the Thompsons' motion to amend the August 12, 1996, order, dismissed the Thompsons' petition for permanent custody pursuant to the terms of the stipulation, and awarded permanent legal custody of J.J.G. to the DFS with the right to consent to adoption. Pursuant to § 41-3-406(1), MCA, the District Court also required that the DFS provide treatment and counseling to J.J.G. for at least one year, and that the DFS report to the District Court, pursuant to § 41-3-610, MCA, in 180 days regarding the child's placement.

ISSUE 1
¶ 18 Did the District Court err when it dismissed the Thompsons' petition for permanent legal custody?
¶ 19 Our standard of review for cases involving youths in need of care has been clearly articulated. See In re J.J.G. (1994), 266 Mont. 274, 281, 880 P.2d 808, 812; In re D.H. and F.H. (1994), 264 Mont. 521, 525-26, 872 P.2d 803, 805.
¶ 20 We consider whether a district court's findings of facts are clearly erroneous, pursuant to the standard set forth in Interstate Production Credit Ass'n v. De-Saye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. See In re J.J.G., 266 Mont. at 281, 880 P.2d at 812; In re D.H. and F.H., 264 Mont. at 524-25, 872 P.2d at 805. In addition, we review a district court's conclusions of law to determine if they are correct. See In re J.J.G., 266 Mont. at 281, 880 P.2d at 812; In re D.H. and F.H., 264 Mont. at 525, 872 P.2d at 805. If the district court's findings of fact are not clearly erroneous and *1124 its conclusions of law are correct, we will not reverse its decision regarding a custody determination of a child absent an abuse of discretion. See In re D.H. and F.H., 264 Mont. at 525-26, 872 P.2d at 806; see also In re Custody of J.M.D. (1993), 259 Mont. 468, 473, 857 P.2d 708, 712.
¶ 21 Here, the Thompsons assert that the District Court erred when it dismissed their petition pursuant to the terms of their stipulation. They contend that the withdrawal of their petition would not be in the best interest of J.J.G. and that Dr. Robinson's recommendation of continued placement with the Schollers was conditional and, therefore, essentially rendered the stipulation ineffective.
¶ 22 We agree with the Thompsons that their petition cannot be dismissed solely on the basis of the terms of the stipulation. The custody of a child is not subject to contract. Rather, in all matters relating to children, a district court must be guided by the best interest of the child, not by agreement of others. See In re Custody of J.M.D., 259 Mont. at 473, 857 P.2d at 711-12; In re Marriage of Fesolowitz (1993), 258 Mont. 380, 386, 852 P.2d 658, 662. The District Court's determination must be based on its own independent judgment of the child's best interest. See In re Custody of J.M.D., 259 Mont. at 473, 857 P.2d at 712.
¶ 23 Contrary to the Thompsons' assertion, however, we find substantial and credible evidence in the record to support the District Court's findings, which, independent of the parties' stipulation, support its decision to dismiss the Thompsons' petition for permanent custody. Although the stipulation was clearly intended in large part to effectuate a final determination of this matter, the District Court's decision not to delay a determination for another year and its consequent dismissal of the Thompsons' petition do not indicate that it disregarded the best interest of the child or that it acted simply on the basis of the stipulation.
¶ 24 The District Court's findings reflect that it exercised its independent judgment regarding the child's best interest. Its findings are supported by the record and were not clearly erroneous, and we conclude that it did not abuse its discretion. Therefore, we conclude that the District Court did not err when it dismissed the petition.
¶ 25 In fact, we conclude that an application of the best interest of the child standard requires precisely the kind of balancing that occurred here. The District Court weighed, in light of the vast record in this case, the postponement of a final disposition against the potential benefit of further evaluation and determined that further challenges and protraction by the Thompsons' were not in J.J.G.'s best interest.
¶ 26 Therefore, we affirm the District Court's denial of the Thompsons' motion to amend and its dismissal of their petition for permanent custody.

ISSUE 2
¶ 27 Did the District Court err when it awarded permanent legal custody of J.J.G. with the right to consent to adoption to the DFS?
¶ 28 The Thompsons allege that the manner in which the DFS has handled the custody and treatment (or the alleged lack thereof) of J.J.G. constitutes institutional neglect. They rely largely on the testimony of Margaret Stuart, an expert in the areas of social work and child placement issues, who conducted a records review of this matter for the Thompsons. On the basis of Stuart's review, as well as their earlier allegations, the Thompsons contend that the District Court's award of permanent custody to the DFS constitutes an abuse of discretion.
¶ 29 Upon review of the record, however, we conclude that the District Court did not abuse its discretion. It is well-established that a district court is in the best position to determine the best interest of a child. See In re Marriage of Otto (1990), 245 Mont. 271, 274, 800 P.2d 706, 708; In re Marriage of Ward (1986), 223 Mont. 401, 403-04, 725 P.2d 1211, 1213. Moreover, issues of evidentiary weight and witness credibility are clearly within the province of the district court, and we will not substitute our judgment for the district court's. See In re Marriage of Abrahamson (1996), 278 Mont. 336, 342, 924 P.2d 1334, 1338; In re J.L. (1996), 277 Mont. 284, 290, 922 P.2d 459, 462.
*1125 ¶ 30 Here, Stuart's testimony reflected the fact that her recommendation was based strictly on her review of the records, and it did not involve any personal experience with J.J.G. or with the professionals who had been treating and evaluating him in Washington. Also before the District Court, in addition to other evidence about the care that J.J.G. had received, was Stuart's testimony that J.J.G. had received substantial evaluation and treatment in Washington. Finally, the record indicates that many of the allegations of neglect were in fact distortions of events that occurred many years before. Although her conclusion from her review was that the DFS had essentially mistreated J.J.G. and neglected his special needs, we conclude, in light of the record, that the District Court did not err when it found otherwise.
¶ 31 Stuart recommended that, ideally, a foster child should be adopted at an early age by his extended family. Here, J.J.G. had lived with the Schollers for almost his entire life. Dr. Robinson testified that J.J.G. felt the Schollers were his family and that their home was his home. Accordingly, the District Court did not abuse its discretion when it preserved J.J.G.'s family environment by awarding permanent custody with the right to consent to adoption to the DFS.

ISSUE 3
¶ 32 Did the District Court err when it adopted verbatim the DFS's proposed orders?
¶ 33 We stated in In re Marriage of Nikolaisen (1993), 257 Mont. 1, 5, 847 P.2d 287, 289, that it is not error per se for a district court to adopt a party's proposed findings and conclusions. We will review the findings and conclusions to determine whether they are "sufficiently comprehensive and pertinent to provide a basis for a decision, and whether they are supported by substantial evidence." Nikolaisen, 257 Mont. at 5, 847 P.2d at 289. See also In re Marriage of Allison (1994), 269 Mont. 250, 265, 887 P.2d 1217, 1226; Norman v. City of Whitefish (1993), 258 Mont. 26, 31, 852 P.2d 533, 536.
¶ 34 Our review of the record in this matter reveals that the District Court's findings are supported by substantial evidence and that the best interest of J.J.G. were considered by the District Court and formed the basis of its independent judgment in this matter. Accordingly, we hold that the District Court did not err when it adopted the DFS's proposed findings and conclusions.
¶ 35 Therefore, we affirm the orders and judgment of the District Court.
TURNAGE, C.J., and GRAY, NELSON and HUNT, JJ., concur.