No. 96-076

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

**FILED**

JUL 30 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

IN THE MATTER OF THE ADOPTION
OF JESSICA LYNN RIFFLE,
a Youth in Need of Care

APPEAL FROM:   District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Jerrold L. Nye; Nye & Meyer, Billings, Montana

For Respondent:

Monte J. Boettger, Attorney at Law,
Lewistown, Montana (for John Garlick)

Ann Gilkey, Department of Family Services,
Helena, Montana (for Department of Family Services)

Ronald Arneson, Attorney at Law, Billings, Montana
(for Turtle Mountain Band of Chippewa Indians)

Submitted on Briefs:   June 27, 1996

Decided:   July 30, 1996

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Appellants, Kenneth and Clara Siroky (the Sirokys), appeal from the Findings of Fact and Conclusions of Law and Order of the Tenth Judicial District Court, Fergus County, concluding that Jessica Lynn Riffle (Jessica) is an Indian child and that, pursuant to the Indian Child Welfare Act, 25 U.S.C. §§ 1901 to 1963 (the ICWA), Jessica's uncle, John Garlick (Garlick) gets the benefit of an adoptive placement preference. We affirm.

The Sirokys present four issues on appeal:

1. Is Jessica an "Indian child" as defined by the ICWA?

2. Does application of the ICWA deny Jessica her constitutional rights?

3. Have Jessica's best interests been addressed?

4. Is the Montana Department of Public Health and Human Services' (Department) consent required for the adoption of Jessica pursuant to § 40-8-111, MCA?

The background to this case is set forth in this Court's opinion in In re Adoption of Riffle (1995), 273 Mont. 237, 902 P.2d 542. In Adoption of Riffle, Garlick, who is an enrolled member of the Turtle Mountain Band of Chippewa Indians, the Department, and the Turtle Mountain Band of Chippewa Indians (the Tribe) appealed the District Court's grant of the Sirokys' petition for adoption of Jessica. We reversed and remanded for a determination of whether Jessica is an "Indian child" pursuant to 25 U.S.C. § 1903(4).

In Adoption of Riffle, we held that, in determining whether a child is an "Indian child" pursuant to the ICWA, the Tribe is the

2

ultimate authority on eligibility for tribal membership. <u>Adoption of Riffle</u>, 902 P.2d at 545. The ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). Consequently, we held that the district court erred in relying on the Bureau of Indian Affairs' (BIA) determination that Jessica is ineligible for tribal membership based on her blood quantum. <u>Adoption of Riffle</u>, 902 P.2d at 545. Furthermore, we held that the Tribe must be allowed to intervene in the proceeding. <u>Adoption of Riffle</u>, 902 P.2d at 545.

On remand, the District Court concluded that the Tribe's determination that Jessica is an Indian child and is a member of the Tribe was conclusive. Thus, the court determined that the ICWA applied to Jessica's adoption. Consequently, although the court found that both the Sirokys and Garlick could provide a loving, caring and secure environment for Jessica, the court concluded that there was no good cause not to follow the ICWA placement preferences and that the ICWA preference favored placement with Jessica's uncle, Garlick. Thus, the court granted Garlick's petition for adoption of Jessica and concluded that it was in Jessica's best interest to maintain contact with the Sirokys.

We review district court conclusions of law to determine whether the court's interpretation of law is correct. <u>Adoption of</u>

<u>Riffle</u>, 902 P.2d at 544 (citing Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603).

1. Is Jessica an "Indian child" as defined by the ICWA?

We find this issue to be dispositive. There are two prerequisites to the application of the ICWA: (1) a child custody proceeding; and (2) an Indian child. 25 U.S.C. § 1903; <u>see generally</u> Debra DuMontier-Pierre, *The Indian Child Welfare Act of 1978: A Montana Analysis*, 56 MONT. L. REV. 505, 510 (1995). The instant case meets both prerequisites.

In <u>Adoption of Riffle</u>, we quoted § B.1.(b)(i) of the Department of Interior Guidelines for State Courts when interpreting the ICWA:

> The determination by the tribe that a child is not a
> member of that tribe, or is not eligible for membership
> in that tribe, or that the biological parent is or is not
> a member of that tribe is conclusive.

<u>Adoption of Riffle</u>, 902 P.2d at 545. We held that the Tribe is the ultimate authority on eligibility for tribal membership. <u>Adoption of Riffle</u>, 902 P.2d at 545.

In the instant case, the Tribe filed papers with the District Court officially recognizing Jessica as an Indian child and a "member of the tribe" under the provisions of the ICWA. Contrary to the Sirokys' contention, enrollment of the child in the Tribe is not required so long as the Tribe recognizes the child as a member. In re Junious M. (Cal. Ct. App. 1983), 193 Cal.Rptr. 40, 44. Enrollment and membership are not synonymous. In re Baby Boy Doe (Idaho 1993), 849 P.2d 925, 931. Enrollment is a common but not exclusive evidentiary means of determining membership in a tribe.

4

Baby Boy Doe, 849 P.2d at 931 (citing 44 Fed.Reg. 67,584, 67,586 (1979)). Given the Tribe's determination that Jessica is an Indian child, we hold that the District Court correctly concluded that the Tribe's determination was conclusive.

Since Jessica is an Indian child, the ICWA applies to this adoption proceeding. Accordingly, the District Court properly applied the adoptive placement preferences found at 25 U.S.C. § 1915. 25 U.S.C. § 1915(a) provides:

> In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with
>     (1) a member of the child's extended family;
>     (2) other members of the Indian child's tribe; or
>     (3) other Indian families.

The child's extended family is defined at 25 U.S.C. § 1903(2) as follows:

> "extended family member" shall be as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or *uncle*, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent[.] [Emphasis added.]

As Jessica's uncle, Garlick clearly falls within the definition of "extended family member." The District Court was thus correct in giving Garlick the benefit of the adoptive placement preference under 25 U.S.C. § 1915(a).

2. Does application of the ICWA deny Jessica her constitutional rights?

The Sirokys ask this Court to adopt the rationale of the California appellate court in its recent decision in In re Bridget R. (Cal. Ct. App. 1996) 49 Cal.Rptr.2d 507. In In re Bridget R.,

5

the California court held that the ICWA could not be constitutionally applied in the absence of evidence that the biological parents have a significant social, cultural, or political relationship with the Tribe. In re Bridget R., 49 Cal. Rptr.2d at 526.

In 1978, Congress passed the ICWA in response to a significant threat to the integrity of Indian cultures caused by the alarmingly high incidence of often unwarranted removal of Indian children from their families. 25 U.S.C. § 1901(4). Congress declared that "it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families. . . ." 25 U.S.C. § 1902. As this Court has previously stated, we share Congress' concern and support its policy. In re Baby Girl Jane Doe (1993), 262 Mont. 380, 385, 865 P.2d 1090, 1092; In re M.E.M. (1981), 195 Mont. 329, 333, 635 P.2d 1313, 1315-16. In In re M.E.M., we stated that it was our constitutional duty to preserve the unique cultural heritage and integrity of the American Indians. Mont. Const. art. X, § 1(2); In re M.E.M., 635 P.2d at 1316. Moreover, in Mississippi Band of Choctaw Indians v. Holyfield (1989), 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29, the United States Supreme Court affirmed the intent and purposes of the ICWA. In In re Baby Girl Doe, we discussed Mississippi Choctaw at length and concluded that "the principal purposes of the Act are to promote the stability and security of Indian tribes by preventing

6

further loss of their children; and to protect the best interests of Indian children by retaining their connection to their tribes." In re Baby Girl Doe, 865 P.2d at 1095. Accordingly, we hold that the application of the ICWA does not deny Jessica her constitutional rights and we decline to adopt the California Court's approach in In re Bridget R.

3. Have Jessica's best interests been addressed?

The Sirokys contend that the District Court should have made a "best interest" analysis under § 40-8-109, MCA, outside the restrictions, preferences or limitations of the ICWA. However, since we affirm the District Court's determination that the ICWA applies to this adoption, a determination of "best interests" under Montana law would be inappropriate. The ICWA expresses the presumption that in an adoptive placement of an Indian child, the child's best interests are best served by placement with an extended family member. 25 U.S.C. 1915(a)(1). To overcome this preference, a party must establish the existence of "good cause to the contrary." 25 U.S.C. 1915(a)(1). BIA guidelines provide "good cause to the contrary" must be based upon one or more of the following considerations:

> (i) The request of the biological parents or the child when the child is of sufficient age.
>
> (ii) The extraordinary physical or emotional needs of the child as established by testimony of a qualified expert witness.
>
> (iii) The unavailability of suitable families for placement after a diligent search has been completed for families meeting the preference criteria.

7

Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584, 67,594 (1979).

At least two courts which have interpreted the "good cause" exception of 25 U.S.C. § 1915 have determined that courts may consider the best interests of the child in determining whether the exception applies.[1] Matter of Adoption of F.H. (Alaska 1993), 851 P.2d 1361, and Adoption of M. (Wash. Ct. App. 1992), 832 P.2d 518. The Minnesota Supreme Court, however, has rejected this interpretation and we agree. The Minnesota Supreme Court held that:

> We believe, however, that a finding of good cause cannot be based simply on a determination that placement outside the preferences would be in the child's best interests. The plain language of the Act read as a whole and its legislative history clearly indicate that state courts are a part of the problem the ICWA was intended to remedy. *See Mississippi Band of Choctaw Indians*, 490 U.S. at 44-45, 109 S.Ct. at 1606-07. . . . The best interests of the child standard, by its very nature, requires a subjective evaluation of a multitude of factors, many, if not all of which are imbued with the values of majority culture. It therefore seems "most improbable" that Congress intended to allow state courts to find good cause whenever they determined that a placement outside the preferences of § 1915 was in the Indian child's best interests. *Cf. Mississippi Band of Choctaw Indians*, 490 U.S. at 45, 109 S.Ct. at 1606-07.

Matter of Custody of S.E.G. (Minn. 1994), 521 N.W.2d 357, 362-63.

---

[1] We note that in In re M.E.M., we stated that, in determining whether to transfer jurisdiction to the tribal court, "the best interest of the child could prevent transfer of jurisdiction upon 'clear and convincing' showing by the State." In re M.E.M., 635 P.2d at 1317. In the instant case, however, we are not considering the transfer of jurisdiction to a tribal court; rather, we are considering adoption placement preferences under 25 U.S.C. § 1915(a)(1). Thus, In re M.E.M. is not controlling on this issue.

Although the District Court cited Adoption of M. and concluded that "there was no good cause not to follow the placement preference *and Garlick's adoption is in the best interests of the child*" (emphasis added), that conclusion, to the extent that it determines "best interests," is an unnecessary and inappropriate analysis under the ICWA. The determination that there was no "good cause" not to follow the ICWA placement preference was sufficient.

In the present case, the record clearly supports the conclusion that there was no "good cause" for overcoming the placement preferences of the ICWA: the Department had approved Garlick as providing an approved adoptive home; Garlick is bonded with Jessica; he had significant contact with her during the first 18 months of her life; he is Jessica's uncle and, as such, is part of her extended family; Jessica's natural mother supported Garlick as the adoptive parent for Jessica, and; the Department supports Garlick as the adoptive parent for Jessica.

We affirm the District Court's decision to adhere to the adoption preferences established by the ICWA.

4. Is the Montana Department of Public Health and Human Services' consent required for the adoption of Jessica pursuant to § 40-8-111, MCA?

We hold that the District Court correctly applied the provisions of the ICWA and granted Garlick's Petition for Final Adoption of Jessica Lynn Riffle. The Department supported and consented to Garlick's adoption of Jessica. Since the court did not grant the Sirokys' petition to adopt, the Sirokys' argument

9

that they do not need the Department's consent to petition for the adoption of Jessica is moot.

Affirmed.

_____
                Justice

We concur:

_____
           Chief Justice

_____

_____
           Justices

10

Justice Karla M. Gray, specially concurring.

I concur in the result reached in the Court's opinion and with much of what is said therein. On the basis of the record before us, however, I disagree with the Court's conclusion that Jessica is an "Indian child" as defined by the ICWA and its related conclusion that the ICWA applies. I would affirm the District Court on the basis of that court's determination that Jessica's adoption by her uncle, John Garlick, is in her best interests.

As the Court correctly observes, the ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." See 25 U.S.C. § 1903(4). I also agree with the Court that a Tribe's determination that a child is "a member or eligible for membership" is conclusive for purposes of the ICWA.

The Court states that the Tribe officially recognized Jessica as an Indian child and "a member of the Tribe." I agree that the Tribe stated that Jessica is "an Indian child;" that statement is not conclusive on the District Court, however, because it is a conclusion of law that only the court can make by applying the ICWA definitions to the record before it.

I disagree with the Court's conclusion that the Tribe's "recognition" of Jessica as a member of the Tribe meets either definition of an "Indian child" under the ICWA. I do not find of

11

record any statement by the Tribe that Jessica either _is_ a member of, or _is eligible_ for membership in, the Tribe. What the Tribe does say is that Jessica is "recognized as a member during her childhood." It is my view that the ICWA requires more than this. Thus, while I agree with the Court that the language of the ICWA does not require that the child actually be enrolled as a member, the ICWA does require that the child be a member or eligible for membership. No clear and unequivocal determination to either effect has been made by the Tribe.

Notwithstanding my disagreement with the Court over whether the ICWA applies here, however, I also would affirm the District Court. The District Court determined that it is in Jessica's best interests to be adopted by her uncle, John Garlick, and there is a surfeit of evidence on the record to support that determination.

Karla M. Gray
Justice

12

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Jerrold L. Nye, Esq.
Nye & Meyer
3317 Third Ave. No.
Billings, MT 59101

Monte J. Boettger
Attorney at Law
Montana Building, Ste. 507
Lewistown, MT 59457

Ann Gilkey, Counsel
Department of Family Services
Box 8005
Helena, MT 59604-8005

Ronald Arneson
Attorney at Law
2204 Wingate
Billings, MT 59102

Laura Singley
Route 2, Box 2006
Lewistown, MT 59457

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA