No. 98-070

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 176

IN THE MATTER OF A.P.,

A Youth in Need of Care.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:


For Appellant:


Terryl Healy, Cut Bank, Montana


For Respondent:


Bethany F. Schendel, Great Falls, Montana; Patrick Watt, Jardine, Stephensen, Blewett & Weaver, Great Falls, Montana; Joseph P. Mazurek, Attorney General, Sarah A. Bond, Assistant Attorney General, Helena, Montana; Brant Light, Cascade County Attorney, Great Falls, Montana


Submitted on Briefs: June 11, 1998

Decided: July 16, 1998

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶ **This is an appeal from the December 8, 1997 Findings of Fact, Conclusions of Law and Order of the Eighth Judicial District Court, Cascade County, denying the motion of the Gros Ventre and Assiniboine Tribes of the Fort Belknap Community Council (Tribes) to transfer jurisdiction of this matter to the Fort Belknap Tribal Court (Tribal Court). We affirm the decision of the District Court.**

**Background**

¶ **A.P. was born in Great Falls, Montana, on March 27, 1995. He and his biological mother, J.P., were domiciled in and residents of Great Falls. Great Falls is not located within the exterior boundaries of any Indian reservation. A.P.'s father has had no contact with the child or his mother since A.P. was born. J.P. is listed as one-half "Indian" in the Fort Belknap Tribal enrollment book; other evidence presented to the District Court indicates that she is part Assiniboine.**

¶ **Whether A.P. is eligible for tribal membership, and is, thus, an "Indian Child" for purposes of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-63, is in**

dispute. According to Bureau of Indian Affairs records, A.P. is not eligible for enrollment in the Fort Belknap Indian Community. A Tribal historian, however, testified that A.P. may be enrollable as either an Assiniboine or as a Gros Ventre by reason of his quantum of Indian blood. The Tribes' motion to transfer alleges that A.P. is eligible for enrollment in the Assiniboine Tribe. For purposes of our decision here, we assume, *arguendo*, that A.P. is eligible for membership in one of these tribes and is, thus, an "Indian Child" for purposes of the ICWA, 25 U.S.C. § 1903(4). *See also Adoption of Riffle* (1995), 273 Mont. 237, 242, 902 P.2d 542, 545 (*Riffle I*) (tribe is the ultimate authority on eligibility for tribal membership).

¶ In September 1995, based upon information that A.P. was in danger as a result of J.P.'s long-standing chemical abuse problems, the Montana Department of Public Health and Human Services (DPHHS) obtained an order for temporary investigative authority (TIA) and custody from the District Court. DPHHS notified the Tribes of these proceedings in accordance with the ICWA, 25 U.S.C. § 1912(a), and counsel was appointed for J.P., 25 U.S.C. § 1912(b). Counsel was also appointed for A.P.

¶ DPHHS maintained custody of A.P. and worked with J.P. in an attempt to reconcile mother and child. Ultimately, however, J.P. was unable to complete her treatment plan. Various court proceedings with respect to A.P. occurred between September 1995 and before the closing of the case on DPHHS's petition for permanent custody and approval of preadoptive placement on June 9, 1997. Specifically, there was a show cause hearing on September 27, 1995, with respect to continuing the TIA; there was an adjudicatory hearing on the state's petition for legal custody on April 25, 1996; there was a hearing on October 22, 1996, to terminate A.P.'s father's parental rights and to terminate J.P.'s parental rights, the latter by consent; and the permanent custody award and permanency plan were set for review on June 5, 1997. On June 9, 1997, the court issued its written order awarding the state permanent legal custody and closing the matter, acknowledging that DPHHS had made an appropriate plan for A.P.'s permanency.

¶ The Tribes were given timely notice of each proceeding in accordance with 25 U.S.C. § 1912(a). Furthermore, the Tribes received copies of the various petitions and motions filed in the state court proceedings along with copies of the District Court's orders resulting therefrom. Notwithstanding, the Tribes did not move to transfer A.P.'s case to Tribal Court, did not move to intervene, and did not appear or file documents in any of these proceedings prior to the court's June 9, 1997 order. On

July 7, 1997, however, approximately one month after the case was closed and twenty-two months after first receiving notice of the proceedings involving A.P., the Tribes first appeared, moving to transfer A.P.'s case to Tribal Court under the ICWA.

¶ Apart from the proceedings in District Court, once custody had been awarded to DPHHS, this agency exercised its authority to make administrative placement decisions for A.P. In accordance with the placement preferences and spirit of the ICWA, DPHHS worked with the Tribes to attempt placement on the reservation and in accordance with J.P.'s wishes. In March 1997, DPHHS placed A.P. with a Fort Belknap Reservation family in accordance with the Tribes' request. That placement failed when the family requested that the State remove A.P. from their home. The Tribes offered no other appropriate placements on the reservation.

¶ Finally, in the summer of 1997, A.P. was placed with his fifth and, thus far, last placement. A.P.'s present placement is with an Indian custodian and her husband who reside in Great Falls. The Indian custodian intervened in these proceedings in October 1997. The Indian custodian is a member of the Turtle Mountain Band of the Chippewa Tribe, and she has contacted the Tribes to attempt to enroll A.P. in his Tribe. The Indian custodian testified in District Court that, as an Indian, she understands the need for A.P. to be raised to appreciate his affiliation with the Gros Ventre Tribe and she has testified that she will maintain ties with the Fort Belknap Reservation and raise A.P. to understand the culture of the Tribes of which he is a part. A.P. remains with this family in Great Falls. It appears that they are providing a secure and loving home for him and that he is thriving.

¶ The instant appeal is from the District Court's denial of the Tribes' July 7, 1997 motion to transfer which was followed by a jurisdictional hearing held over three days on October 14, October 30 and November 13, 1997. In summary, 25 U.S.C. § 1911(b) of the ICWA allows the tribe of an Indian child to move to transfer state court foster care placement and parental rights termination proceedings to tribal court. This statute provides that the tribal court is the preferred forum, but allows a state court to refuse to transfer based on a showing that good cause exists not to transfer, based upon objection by either parent or based upon declination by the tribal court.

¶ In the case at bar, the District Court found that it was not in A.P.'s best interests to

transfer his case. The court concluded that § 1911(b) did not apply as there was no state court proceeding when the Tribes' transfer motion was filed; because the Tribes' transfer motion was not filed during a foster care placement of or termination of parental rights proceeding; and because this section is not applicable to a preadoptive placement proceeding. From the District Court's denial of the Tribes' motion to transfer, this appeal followed.

## Issues

¶ The issues on appeal, as framed by the State, are as follows:

¶ 1. Did the District Court correctly conclude that 25 U.S.C. § 1911(b) of the ICWA does not provide for transfer to tribal court of a state administrative preadoptive placement occurring after state court proceedings had closed and parental rights had terminated?

¶ 2. If 25 U.S.C. § 1911(b) of the ICWA is applicable, did the court correctly conclude that good cause existed not to transfer jurisdiction because the proceedings, having commenced two years earlier and having closed one month prior to the motion to transfer, were at an advanced stage?

¶ 3. Did the District Court correctly apply this Court's rule in *In the Matter of T.S.* (1990), 245 Mont. 242, 801 P.2d 77, and *In the Matter of M.E.M.* (1984), 209 Mont. 192, 679 P.2d 1241, in considering the best interests of the child as modified by the considerations listed in the Bureau of Indian Affairs Guidelines, to find that it was not in the child's best interests to transfer?

¶ Since our discussion of Issue 1 is dispositive, we decline to address Issues 2 or 3.

## Standard of Review

¶ The issues raised in this case involve questions of law. We review a district court's

conclusions of law simply to determine whether the court's interpretation of the law is correct. *Adoption of Riffle* (1996), 277 Mont. 388, 391, 922 P.2d 510, 512 (*Riffle II*).

## Discussion

¶ For purposes of our discussion, it is important to bear in mind that the progression of A.P.'s case involved different state court proceedings, each with its own statutory requirements. With its September 1995 petition for TIA, DPHHS proceeded under § 41-3-404, MCA, and obtained temporary custody in April 1996. The agency then proceeded under §§ 41-3-601 to -612, MCA, for termination of parental rights and for permanent custody. On June 5, 1997, the court reviewed DPHHS permanency plan for A.P., closed the final case petition for permanent custody, and approved DPHHS to proceed with adoption and preadoptive placements. Following this order, the agency placed A.P. in a preadoptive placement with his present Indian custodian and her husband.

¶ These distinctions are important in our determination of whether the requirements of the ICWA have been met as regards the particular state court proceedings at issue. *See M.E.M.*, 209 Mont. 192, 679 P.2d 1241; *Riffle II*, 277 Mont. 388, 922 P.2d 510.

¶ In relevant part, 25 U.S.C. § 1911, provides:

### (b) Transfer of proceedings; declination by tribal court

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe.

As can be seen from the plain language of this statute, state court proceedings are required to be transferred to tribal jurisdiction where "foster care placement" or "termination of

parental rights" is the matter at issue. As noted by the Supreme Court in *Mississippi Band of Choctaw Indians v. Holyfield* (1989), 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29:

> At the heart of the ICWA are its provisions concerning jurisdiction over Indian child custody proceedings. Section 1911 lays out a dual jurisdictional scheme. . . . Section 1911(b) . . . creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation: on petition of either parent or the tribe, state-court proceedings *for foster care placement* or *termination of parental rights* are to be transferred to the tribal court, except in cases of "good cause," objection by either parent, or declination of jurisdiction by the tribal court.

*Holyfield*, 490 U.S. at 36 (emphasis added).

¶ **Foster care placement is defined in 25 U.S.C. § 1903(1)(i) and involves temporary placement of the child "but where parental rights have not been terminated." Section 1903(1)(ii) defines termination of parental rights as "any action resulting in the termination of the parent-child relationship." Accordingly, under § 1911(b), the ICWA provides only for transfer of state court proceedings prior to termination of parental rights.**

¶ **In the instant case, prior to the termination of parental rights, there was no petition by either of A.P.'s parents for transfer of the state court proceedings to Tribal Court. Moreover, there was no challenge or objection by A.P.'s parents or the Tribes to such proceedings taking place in state court, to the temporary and permanent custody orders or to the termination of parental rights order issued by the court in October 1996. Indeed, the Tribes effectively declined transfer of jurisdiction by failing to request transfer in the state court proceedings under § 1911(b) and by failing to intervene under § 1911(c) despite being given actual notice of the proceedings.**

¶ **By the time the Tribes first appeared and moved to transfer, A.P.'s case had progressed to the point where his parents' rights had been terminated and to the point where custody had been permanently placed with DPHHS with approval for preadoptive placements and adoption. In fact, state court proceedings had terminated altogether before the Tribes' motion was filed. Accordingly, we conclude**

that the District Court correctly determined that § 1911(b) did not apply to the Tribes' transfer motion because, at the time it was filed, there was no ongoing state court proceeding for foster care placement or termination of parental rights.

¶ Rather, what was extant at the time the Tribes' motion to transfer was filed was A. P.'s preadoptive placement with the Indian custodian and her husband. Section 1903 (1)(iii) defines "preadoptive placement" as "the temporary placement of an Indian child in a foster home or institution *after* the termination of parental rights, but prior to or in lieu of adoptive placement. [Emphasis added.]" The District Court concluded that § 1911(b) does not apply to preadoptive placement proceedings. We agree.

¶ Our prior cases involving preadoptive and adoptive placements have involved only the intervention and placement preference provisions of 25 U.S.C. § 1915, rather than transfer issues. *See e.g.*, *Riffle II*, 277 Mont at 392, 922 P.2d at 513; *Matter of Baby Girl Jane Doe* (1993), 262 Mont. 380, 385-86, 865 P.2d 1090, 1093. Other courts faced with this question, however, have concluded that § 1911(b) only applies to foster care placements and termination of parental rights proceedings. *See Matter of J.B.* (Okla.App. 1995), 900 P.2d 1014 (transfer authority under § 1911(b) is limited to proceedings for "foster care placement" and "termination of parental rights" and not to "preadoptive placements" as § 1903(1) defines those terms); *Matter of Ashley Elizabeth R.* (N.M.App. 1993), 863 P.2d 451 (since children were neither residents nor domiciled on the reservation, § 1911(b) applies to the tribe's motion to transfer the foster care placement at issue).

¶ The Tribes argue that we should disregard the plain language of § 1911(b), and, because § 1911(c) empowers a tribe to intervene "at any point in the proceedings," that we should allow the motion to transfer despite the fact that the foster care placement proceedings and termination of parental rights proceedings were completed prior to the motion being filed. We decline to do so.

¶ We have stated that a tribe's right to intervene in a proceeding is not impaired if it does not intervene promptly after receiving notice. *Riffle I*, 273 Mont. at 241, 902 P.2d at 544. However, timeliness aside, the Tribes' argument fails to recognize the fundamental difference between transferring a case to an entirely different court system, on the one hand, and granting participation by way of intervention in ongoing proceedings in the state court that already has had a substantial and lengthy involvement in various aspects of the case, on the other. As discussed in the BIA

**guidelines at 44 Fed. Reg. 67590 (1979):**

> This section specifies that requests are to be made promptly after receiving notice of the proceeding. . . . While the Act permits intervention at any point in the proceeding, it does not explicitly authorize transfer requests at any time. Late interventions do not have nearly the disruptive effect on the proceeding that last minute transfers do. A case that is almost completed does not need to be retried when intervention is permitted. . . . Although the Act does not explicitly require transfer petitions to be timely, it does authorize the court to refuse to transfer a case for good cause. When a party who could have petitioned earlier waits until the case is almost complete to ask that it be transferred to another court and retried, good cause exists to deny the request.

*See also People in Interest of J.J. and S.J.* (S.D.1990), 454 N.W.2d 317 (tribal motion to intervene in an extant proceeding was granted; but appropriate, though untimely, § 1911 (b) motion to transfer was denied because, citing the BIA guidelines, intervention is far different than transfer and would subject children to potentially dangerous situations and not be in their best interest).

**¶ Here, as to the foster care placements and termination of parental rights, A.P.'s case was not "almost completed," but, rather, these proceedings had been completed and closed for a month when the Tribes' transfer motion was filed. Even if § 1911(b) allowed transfer at that point in time (which it does not), the disruptive effect of transfer to an entirely new court system for more litigation and possible retrial is manifest and is hardly in the best interest of the parents or the child.**

**¶ We conclude that the District Court properly denied the Tribes' § 1911(b) transfer motion inasmuch as it was filed at a time when there was no foster care placement nor termination of parental rights proceedings before the court, those proceedings having been completed. Moreover, we conclude that, in the context of a preadoptive placement following the termination of parental rights, the court properly determined that § 1911(b) is inapplicable. Accordingly, we hold that the District Court's denial of the Tribes' motion to transfer jurisdiction of A.P.'s case to Tribal Court was correct as a matter of law.**

¶ **Affirmed.**

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER