No. 90-057

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN THE MATTER OF T.S.

Youth in Need of Care.

FILED

NOV 20 1990

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Daniel Duame; Kawerak, Inc.; Nome, Alaska
D. Michael Eakin; Montana Legal Services Assn.;
Billings, Montana

For Respondent:

Bradley B. Parrish, Lewistown, Montana, Guardian ad
litem
Marc Racicot, Attorney General, Helena, Montana
Clay R. Smith, Asst. Atty. General, Helena, Montana
Jon A. Oldenberg, Lewistown, Montana

Submitted on Briefs: August 23, 1990

Decided: November 20, 1990

Filed:

FILED

NOV 20 1990

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

King Island Native Community, an Eskimo tribe located in Nome, Alaska, appeals from a judgment of the District Court, Tenth Judicial District, Fergus County, denying the Tribe's motion to transfer jurisdiction of child custody proceedings of an Eskimo child under the Indian Child Welfare Act. We affirm.

The issues presented are:

1. Did the District Court err when it held that there was good cause not to transfer jurisdiction of child custody proceedings to King Island Tribal Court?

2. Did the District Court err when it failed to remove the guardian ad litem from the case when the guardian ad litem expressed misgivings about the ICWA?

T.S. was born in Alaska to a mother who is part Eskimo and is eligible for membership in the King Island Native Community (Tribe). Neither Mother nor T.S. is a member of the Tribe and neither have ever resided on the reservation during the lifetime of T.S. The record reveals a long history of transient lifestyle which was punctuated with domestic violence and physical abuse during the marriage of Mother and Stepfather. The evidence indicates that Mother was abused by Stepfather and T.S. was abused by both Mother and Stepfather.

Mother and Stepfather were residing in Fergus County, Montana on August 31, 1988, when T.S. was placed in protective custody by the Montana Department of Family Services (Department). T.S. was three and a half years old at the time. A petition for temporary

2

investigative authority was filed and on September 2, 1988, the District Court appointed a guardian ad litem for T.S. and issued its order for protective services and order to show cause.

Shortly after T.S. was placed in a temporary foster home, Mother returned to Alaska. Mother contacted the Tribe and requested that the Tribe intervene in her case pursuant to the Indian Child Welfare Act (ICWA). On December 27, 1988, the Tribe filed a motion to intervene in the proceedings pursuant to 25 U.S.C. § 1911(c) of the ICWA and intervention was granted the following day. On December 29, 1988, the Department of Family Services filed a petition for permanent legal custody of T.S. and for termination of Mother's parental rights. On February 21, 1989, the Tribe filed a motion to transfer jurisdiction to its tribal court pursuant to 25 U.S.C. § 1911(b). Mother joined the transfer request on March 10, 1989. A hearing to determine the jurisdictional issue was held on July 19, 1989. The District Court denied the Tribe's motion to transfer jurisdiction, holding that there was good cause not to transfer because 1) it would not be in T.S.'s best interests to transfer jurisdiction, and 2) it would constitute an undue hardship to the parties and witnesses in Montana to appear in tribal court in Alaska.

I

Did the District Court err when it held that there was good cause not to transfer jurisdiction of child custody proceedings to King Island Tribal Court?

Section 1911(a) and (b) of the Indian Child Welfare Act

3

states:

(a) Exclusive jurisdiction

An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child <u>who resides or is domiciled within</u> the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

(b) Transfer of proceedings; declination by tribal court

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child <u>not domiciled or residing within</u> the reservation of the Indian child's tribe, the court <u>in the absence of good cause to the contrary</u>, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe; **Provided,** That such transfer shall be subject to declination by the tribal court of such tribe. (Emphasis supplied.)

25 U.S.C. § 1911(a), (b).

Since T.S. was not domiciled or residing within the reservation, subsection (b) applies which requires transferring jurisdiction <u>in the absence of good cause to the contrary</u>. This Court has held that in cases that fall under subsection (b):

The burden of showing "good cause to the contrary" must be carried by the State with clear and convincing evidence that the best interests of the child would be injured by such a transfer. We direct the District Court to consider the guidelines for state courts established by the Department of the Interior in its determination, although in addition thereto the best interest of the child could prevent transfer of jurisdiction upon a "clear and convincing" showing by the State.

In the Matter of M.E.M. Youth in Need of Care (1981), 195 Mont. 329, 336, 635 P.2d 1313, 1317.

4

The guidelines for state courts referred to in M.E.M. state:

Determination of Good Cause to the Contrary

(a) Good cause not to transfer the proceeding exists if the Indian child's tribe does not have a tribal court as defined by the Act to which the case can be transferred.

(b) Good cause not to transfer the proceeding may exist if any of the following circumstances exists:

(i) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing.

(ii) The Indian child is over twelve years of age and objects to the transfer.

(iii) The evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses.

(iv) The parents of a child over five years of age are not available and the child has had little or no contact with the child's tribe or members of the child's tribe.

(c) Socio-economic conditions and the perceived adequacy of tribal or Bureau of Indian Affairs social services or judicial systems may not be considered in a determination that good cause exists.

(d) The burden of establishing good cause to the contrary shall be on the party opposing the transfer.

44 Fed.Reg. 67591 (1979).

These guidelines were drafted by the Bureau of Indian Affairs (BIA) and represent the Department of Interior's interpretation of what grounds would establish good cause. In the introduction, the Department of Interior states the guidelines are "not published as regulations because they are not intended to have binding legislative effect." 44 Fed.Reg. 67584 (1979). Courts are "free to act contrary to what the Department has said if they are convinced that the Department's guidelines are not required by the statute itself." Id. "Primary responsibility for interpreting . . . language used in the Act . . . rests with the courts that decide Indian child custody cases. For example, the legislative

5

history of the Act states explicitly that the use of the term 'good cause' was designed to provide state courts with flexibility in determining the disposition of a placement proceeding involving an Indian child." Id.

In exercising this flexibility, this Court has determined that the "best interests of the child" test will be applied in Montana in determining good cause not to transfer jurisdiction of custody proceedings of Indian children under § 1911(b). M.E.M. at 336, 635 P.2d at 1317. This "best interests of the child" test should not be confused with the "best interests of the child" test applied under § 40-4-212, MCA, in custody determinations between parents in a dissolution. It should also not be confused with the criteria used to determine child abuse, neglect, and dependency and to terminate parent-child legal relationships under Title 41, Chapter 3, MCA.

In Indian child cases such as this, the first step is to determine the § 1911(b) jurisdiction issue by applying the "best interests of the child" test and considering the BIA Guidelines to determine good cause. M.E.M. at 336, 635 P.2d at 1317. The next step is to hold a temporary dispositional hearing under § 41-3-404, MCA, and a dispositional hearing under § 41-3-406, MCA, to determine whether the child is abused, neglected or is a dependent youth. These proceedings require the appointment of a guardian ad litem under § 41-3-303, MCA, to represent the child's interests. The final step under Title 41, Chapter 3, is for the court to determine whether the parent-child legal relationship should be

terminated under the criteria listed in § 41-3-609, MCA. This stage of the proceedings also requires the appointment under § 41-3-607(3), MCA, of a guardian ad litem to represent the child's best interests.

In this case the proceedings are still at the jurisdictional level and the District Court properly applied the jurisdictional "best interests of the child" test and considered the BIA Guidelines.

The uncontroverted evidence at the hearing in this case strongly indicates that any transfer of T.S. from her present environment would "devastate" the child and would have long-term harmful effects upon her. This is the longest, most stable and protected environment she has ever known. The District Court properly considered the only loving environment T.S. has ever known in its application of the best interests test. She resides in a home where the mother is Native American and fully capable and willing to teach T.S. about her Indian heritage. T.S. has adapted to her home and the family desires to adopt her as soon as possible.

The Tribe argues that there is a profound difference between the culture of the Eskimo and the Indian culture of the foster mother and that difference makes it in T.S.'s best interests that jurisdiction be transferred. In essence the Tribe argues that § 1915 of the ICWA presumes that it is in the best interests of T.S. that jurisdiction be transferred. 25 U.S.C. §§ 1915, 1303 (1) (iii), (iv). Section 1915(b) suggests preferential foster care

7

placement of an Indian child. That section states:

> (b)  Foster care or preadoptive placements; criteria; preferences
>
>     Any child accepted for foster care or preadoptive placement shall be placed in the least restrictive setting which most approximates a family and in which his special needs, if any, may be met. The child shall also be placed within reasonable proximity to his or her home, taking into account any special needs of the child. In any foster care or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with--
>     (i) a member of the Indian child's extended family;
>     (ii) a foster home licensed, approved, or specified by the Indian child's tribe;
>     (iii) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or
>     (iv) an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs.

In this case T.S.'s maternal grandmother is unable to provide a home for T.S. and there are no other available family members known to the court. The Department of Family Services has made a good faith attempt to comply with the recommended preferential treatment by placing T.S. in a foster home within reasonable proximity to the child's home in Fergus County and with an Indian foster mother who is fully capable and willing to teach T.S. about her Indian heritage. This Court notes that at the time of the placement, Fergus County was the child's home. Mother did not move to Alaska until after the child was placed in the temporary foster home pending temporary investigative authority and protective proceedings under § 41-3-402, MCA. The Tribe has not had contact with T.S. and never shown any interest or concern for the living conditions that T.S. has been subjected to. The Tribe insists that it has had contact with T.S. and her Mother and also insists it has

8

not intervened in T.S.'s behalf because it did not know of T.S.'s plight. The Tribe cannot have it both ways. There was no evidence in the record to indicate the Tribe has had any contact with T.S. or her Mother until it received notice of the pending matter in Montana courts. The District Court pointed out:

> . . . it is obvious from testimony adduced at the hearing and the record that the Tribe showed little or no interest in [T.S.] and [her mother] prior to this action being filed. There is a long and sad history of abuse and neglect of [T.S.] in the State of Alaska. There was also Social Service involvement with this family in Alaska with no intervention or help for [T.S.] by the Tribe.

The District Court correctly concluded that it was not in the child's best interest to remove her from the only stable, loving home she had known and send her to an isolated community with which she had never had previous contact. The Tribe claims there has been an intentional delay resulting in a greater period in which bonding has occurred in the foster home, thus suggesting that the failure to immediately transfer jurisdiction has been improper. The record does not demonstrate any intentional delay. The record does demonstrate careful examination by both the Department and the District Court and a vital and proper concern for this Indian child who has been abused for the greater part of her life. While it is true that Mother has joined the Tribe's request for transfer, the evidence unfortunately shows Mother to be unable to adequately protect and care for this child. We note that the Tribe submitted no factual basis to allow the District Court to find under the BIA Guidelines or under the best interests of the child test other than

9

that it is in the child's best interests that jurisdiction remain in Montana. We detect nothing in the proceedings to indicate animosity or lack of respect for the Tribe. Concern for the best interests of the child has been the motivating force for both the Department and the District Court.

Under the Guidelines the District Court determined that subsection (b)(iii) applies, which states that good cause not to transfer exists if the evidence necessary to decide the case could not be adequately presented to the court without undue hardship to the parties or the witnesses. 44 Fed.Reg. 67591 (1979). The witnesses and evidence upon which the Department of Family Services action was filed are all located in Montana. The District Court concluded that it would constitute an undue hardship if the parties and witnesses were required to travel from Montana in order to appear in Tribal Court in Alaska. We conclude there is substantial evidence to support that conclusion.

The Tribe argues that the court has overlooked the recommendation of the Department's Indian Child Welfare Specialist concerning transfer of jurisdiction. The Specialist's testimony was not presented at the jurisdictional hearing. The Tribe attempted to bring in the Specialist's recommendation through a post-hearing motion to reconsider on grounds of new evidence. No evidence was presented in the subsequent hearing on the motion to reconsider to show that the Specialist's testimony was unavailable at the time of the jurisdictional hearing, and therefore the evidence is not properly before the Court. In addition, cross

examination of the Specialist at the hearing on the motion for rehearing, revealed that the Specialist had reviewed some unidentified file material but not the entire file or the transcript of the jurisdictional hearing. No evidence indicated the Specialist had interviewed T.S., her mother, or the foster parents. Without a proper foundation to support the Specialist's recommendation, the court would have properly not considered the Specialist's recommendation when applying the best interests of the child test had the evidence been properly before the court. The court correctly denied the motion for reconsideration and properly disregarded the Specialist's recommendation.

The Tribe argues that a 1989 United States Supreme Court ruling mandates transfer of jurisdiction. Mississippi Band of Choctaw Indians v. Holyfield, No. 87-980, slip op. (U.S.Sup.Ct., Apr. 3, 1989). Holyfield was a § 1911(a) case that dealt with the definition of "domiciled." Because T.S. had not been domiciled on the tribal reservation in Alaska, we agree with the conclusion of the District Court that § 1911(a) and Holyfield do not control. There is a valid distinction between a § 1911(b) case such as we have here and a § 1911(a) case such as Holyfield. When the child has been domiciled on the reservation and has significant contacts with the Tribe it is reasonable to assume that jurisdiction should be transferred to the Tribe. In this case we have the opposite circumstances which § 1911(b) is meant to address. T.S. has never lived on the reservation, is not a member of the Tribe and has never had any contact whatsoever with the Tribe. The record

11

demonstrates a total absence of evidence demonstrating that it is in T.S.'s best interests that jurisdiction be transferred to the Tribe.

We hold that the District Court did not err in determining that the best interests of T.S. and undue hardship on parties and witnesses constitutes good cause not to transfer jurisdiction.

## II

Did the District Court err when it failed to remove the guardian ad litem from the case when the guardian ad litem expressed misgivings about the ICWA?

The Tribe did not request the removal of the guardian ad litem and may not now predicate error on the District Court's failure to take such action. In addition, the District Court admonished the guardian ad litem that his thoughts on the ICWA were irrelevant and would be treated as such by the court. We hold the District Court did not err by failing to remove the guardian ad litem.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

12

William E. Hunt Sr.

_____

R. C. McDonough
Justices

Justice John C. Sheehy, dissenting:

It is improper and somewhat patronizing to assume that since the child is now placed with an Indian mother, though of a different tribe and territory, that the purpose of the Indian Child Welfare Act is fulfilled, and good cause shown for not assenting to the jurisdiction of the Eskimo tribe.

The very purpose of the Indian Child Welfare Act was to enable the several tribes to maintain their individuality and their cultures in a mobile and fast-changing national society. I daresay without investigation that the culture, mores, religious beliefs and mode of life is substantially different between the Eskimo tribe of the King Island Native Community and the Plains Indian Tribe to which the foster mother presumably belongs. The majority has determined "best interest" of the child lacking even a smidgeon of information of what the King Island Native Community has to offer. I would hold that the Eskimo tribe has a right to reach out and touch us where eligible members of the Eskimo tribe are concerned. One thing is certain: the culture of the Eskimos will not be preserved or prolonged in Montana. I believe you have to start with whale and seal meat, and the derivatives of these creatures, that made Eskimo life uniquely possible.

I would transfer jurisdiction to the Tribal Court of the Eskimo tribe.

John C. Sheehy
_____
                Justice

14