OPINION OF THE COURT
Gloria Sosa-Lintner, J.
On the very eve of the date scheduled for the finalization of this adoption, and more than a month after a full evidentiary hearing regarding the best interests of the child, the court received notice from court-appointed counsel for the putative father that the putative father was a member of the Native American Indian Traditional Abenaki of Mazipskwik and that the child was therefore also eligible for membership. This information was provided to the putative father’s attorney by the putative father’s mother, who claims to be the chairperson of the "tribe”. Counsel sought a delay of the finalization to determine the applicability of the Indian Child Welfare Act of 1978 (hereinafter ICWA) to the facts at hand. (25 USC § 1901 et seq.)
The court granted a minimal delay, much to the distress of the prospective adoptive parents and presumably, the child, to investigate the validity of the grandmother’s claim.
After such investigation, the court found that the Indian Child Welfare Act of 1978 (25 USC § 1901 et seq.) did not apply and proceeded to finalization. This written decision elaborating on the court’s ruling now follows.
PROCEDURAL HISTORY
The application for the adoption of the subject child Christopher (date of birth Apr. 6, 1991) was filed on July 17, 1996. The petitioners are the child’s maternal grandfather and stepgrandmother. On December 10, 1996 the court granted the petitioners’ ex parte application for a ruling that the putative *853 biological father, who was incarcerated, was entitled to notice of the proceedings only and that his consent was not required. (Domestic Relations Law §§ 111, 111-a.) After notice pursuant to Domestic Relations Law § 111-a was effectuated, the court was contacted by both the putative father and the putative paternal grandmother, who each requested that counsel be assigned for the putative father. Robert Rothman, Esq., an experienced adoption attorney, was thereafter assigned to represent the putative father.
In the interim, the court held an abandonment hearing regarding the biological mother and entered a finding of abandonment against her on February 26, 1997. Although personally served, the biological mother neither appeared at any stage of the hearing nor contacted the court for the assignment of counsel.[2]
On March 24, 1997 counsel for the putative father filed a motion to vacate the court’s December 10, 1996 ruling that the putative father’s consent to the adoption was not required. That motion was denied on June 5, 1997 in a written decision provided to the parties and counsel.
The court then arranged a telephone conference on June 6, 1997 to afford the putative father, who is incarcerated in a Federal correctional institution out of State, the opportunity to offer information relevant to the best interests of the child. (Domestic Relations Law § 111-a [3].) At that hearing, the putative father was unable to offer any evidence that the adoption of the child by the petitioners was not in the child’s best interest. He failed to take responsibility for the illegal activities resulting in his current incarceration and did not appreciate the dangers the child was exposed to as an infant in his care.[3] As an alternative to the adoption, he suggested that the petitioners continue to care for the child until his anticipated release date from prison of March 16, 2002.
*854 At the conclusion of the telephone hearing, the court made a determination that adoption by the petitioners was in the child’s best interests. The finalization of the adoption was scheduled for 9:15 a.m. on July 8, 1997. At approximately 3:00 p.m. on July 7, 1997 the court was informed by the putative paternal grandmother that the child was American Indian.
THE INDIAN CHILD WELFARE ACT OF 1978
The Indian Child Welfare Act of 1978 established national regulation of Native American adoptions in an effort to prevent large numbers of Indian children from being adopted by non- . Indians and to further the cultural integrity of the Native American tribes. (25 USC §§ 1901, 1902.) The Act, inter alia, confers exclusive jurisdiction to an Indian tribal court over any proceeding involving a child domiciled within the reservation, requires the transfer of any matter pending in State court to a tribal court if the tribal court so requests, requires notification to the tribe as well as the parent prior to the commencement of any proceeding and requires the exploration of Native American adoptive parents. (See, 25 USC §§ 1911, 1912 et seq.) The Act also mandates proof beyond a reasonable doubt for any termination of parental rights. (25 USC § 1912 [f].)
After due consideration, however, the court has determined that ICWA does not apply to the case at bar. The Traditional Abenaki of Mazipskwik are not recognized by the Bureau of Indian Affairs as a Federal Indian tribe. (See, 53 Fed Reg 52829 et seq., list of Federally recognized tribes.)[4] Since the Abenaki of Mazipskwik are not a Federally recognized tribe, the subject child of this adoption does not qualify as an Indian child as defined by the Indian Child Welfare Act of 1978. (25 USC § 1903 [3], [4], [5], [8].) At best, the Abenaki of Mazipskwik constitute an "Indian Group”, but their status as an Indian group does not have the same legal significance as that of an Indian tribe. (Abenaki Nation v Hughes, 805 F Supp 234 [D Vt 1992], affd 990 F2d 729.)
Moreover, ICWA does not apply to children born out of wedlock to a non-Indian mother until and unless the putative Indian father acknowledges and establishes paternity. (Matter of Adoption of a Child of Indian Heritage, 111 NJ 155, 543 A2d 925 [1988]; Matter of Appeal in Maricopa County Juvenile *855 Action No. A-25525, 136 Ariz 528, 67 P2d 228 [1983].) In this case, the court made a specific finding that the putative father’s consent to the proposed adoption was not necessary because he was never declared the legal father of the child and never made efforts to assert paternity or establish a parental relationship with the child. (See, this court’s prior order dated June 5, 1997; Domestic Relations Law § 111 [1] [d]; § 111-a.) Consequently, this court is not bound by ICWA requirements and properly exercised jurisdiction over the matter according to New York law.
Nonetheless, the court also finds that the essence and spirit of the ICWA requirements were largely fulfilled, albeit unwittingly. The putative father and the putative paternal grandmother have had notice of these proceedings since at least December 1996. Because the putative grandmother is chairperson of her "tribe”, the actual notice to her substantially fulfills the requirement that the "child’s tribe” be notified in addition to the Indian parent. (25 USC § 1912 [a].) Despite the notification, however, the putative grandmother never asked to intervene, to have the matter transferred to a tribal court or to be considered a custodian or adoptive parent for the child. She also never mentioned the child’s alleged heritage until the eve of finalization, over six months after notification and after all other attempts to block the adoption failed. In the absence of a request or petition from the "tribe”, jurisdiction was properly exercised by the State court. (25 USC § 1911 [b].)
In addition, the notice provisions contained in 25 USC § 1912 (a) and the jurisdiction constraints contained in 25 USC § 1911 only apply to cases where the court "knows or has reason to know” that an Indian child is involved (25 USC § 1912 [a]). In this case, the putative father was assigned counsel, made motions and participated in a dispositional hearing to establish the best interests of the child. At no point during the extensive proceedings did he ever mention that he was a member of a Native American Indian tribe, even though the petition for adoption specifically alleged that the child was not a Native American, nor did the court have any independent reason to suspect that ICWA might apply to the case.
Given the father’s willful failure to notify the court of his Indian heritage, the interests of justice will not permit this court to disregard the voluminous evidence already received in support of the proposed adoption based simply on an informal notification by the putative grandmother, who is not even a party to the proceedings. The subject child of the proceeding *856 has never lived on a reservation, has had no exposure to his alleged Native American heritage, and until July 7, 1997 was not even aware that he might be Native American at all. In addition, neither the putative grandmother nor the "tribe” made any earlier efforts to provide for the child even though the putative Indian father has been incarcerated since the child was three months old. Given the circumstances, the court finds that good cause to deny the transfer would have existed even if ICWA had applied. (25 USC § 1911 [b]; Matter of T.S., 245 Mont 242, 801 P2d 77, cert denied sub nom. King Is. Native Community v Montana Dept. of Family Servs., 500 US 917 [1990]; People in Interest of J.J., 454 NW2d 317 [SD 1990]; People in Interest of A.T.W.S., 899 P2d 223 [Colo Ct App 1994], reh denied [Dec. 22, 1994], cert denied 1995 Colo LEXIS 621 [Aug. 14, 1995].)
Based on the foregoing, the court finds that ICWA does not apply to the proposed adoption and the petition for the adoption is granted.

. On June 6, 1997, more than three months after her trial date, the biological mother appeared in the waiting area outside the courtroom seeking to vacate the orders. The court declined to entertain her oral request since she could not articulate any good cause for her failure to appear when properly served and did not offer a meritorious defense. (CPLR 5015.) She was provided with a list of pro bono legal organizations to assist her in making a formal application if she so chose, but additional motions have not been made to date.

. The child was three months old when the biological mother and the putative father were arrested on drug charges stemming from the ongoing use and sale of illegal substances from their apartment.

. A recent public notice from the Department of the Interior dated May 17, 1996 confirms that the Abenaki Nation of Missisquoi and the Abenaki Family Alliance, two related bands, are not Federally recognized tribes. (61 Fed Reg 24950.)