DA 11-0227

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 312

IN THE MATTER OF:

J.W.C., L.W.C., K.W.C., and C.W.C.,

   Youths in Need of Care.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
       In and For the County of Yellowstone, Cause Nos. DN 09-062,
       DN 09-063, DN 09-064, and DN 09-065
       Honorable Ingrid G. Gustafson, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

      Joslyn Hunt, Chief Appellate Defender, Koan Mercer, Assistant Appellate
      Defender, Helena, Montana

   For Youths:

      Elizabeth Thomas, Attorney at Law, Missoula, Montana

   For Appellee:

      Steve Bullock, Montana Attorney General, John Paulson, Assistant
      Attorney General, Helena, Montana

      Scott J. Pederson, Assistant Attorney General, Child Protection Unit,
      Billings, Montana

          Submitted on Briefs: October 19, 2011

              Decided: December 13, 2011

Filed:

    _____
           Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 The mother of four Indian children appeals from the order of the Thirteenth Judicial District Court, Yellowstone County, Montana, terminating her parental rights to J.W.C., L.W.C., K.W.C., and C.W.C. (children). S.W.C. (Mother) had moved to transfer the case to the Fort Peck Tribal Court, as allowed under the Indian Child Welfare Act (ICWA). 25 U.S.C. § 1911(b). However, the case was never transferred. The District Court maintained jurisdiction, terminated Mother's and C.W.C.'s (Father) parental rights, and denied Mother's request to continue the termination hearing and appoint counsel for the children.

¶2 Mother appeals. She argues that the District Court failed to comply with the jurisdictional ICWA transfer requirements because the Tribal Court should have had jurisdiction over the proceedings upon her petition to transfer jurisdiction. She also argues that the District Court erred when it failed to appoint counsel for the children as required by statute and due process. Lastly, she argues that she was denied her due process right to the effective assistance of counsel when her counsel did not require the Montana Department of Public Health and Human Services (Department) to carry its burden of proof at the adjudication hearing.

¶3 We reverse and remand.

## ISSUES

¶4 Three issues are raised on appeal. A restatement of the dispositive issues is:

¶5 1. Did the District Court comply with the jurisdictional ICWA transfer requirements?

¶6    2. Did the District Court err in failing to appoint counsel for the children?

FACTUAL AND PROCEDURAL BACKGROUND

¶7    Mother, Father, and their four children are members of the Fort Peck Assiniboine and Sioux Tribes (Tribes). In August 2009, the four children were between the ages of one and nine years old. Father was incarcerated and Mother could not provide food or shelter for the children. Mother voluntarily placed the children in foster care on August 26, 2009, and they were all returned to Mother's care by August 31, 2009, when she was able to secure temporary housing for herself and the children at the Gateway House in Billings. They resided there until September 3, 2009, when Mother was taken to an emergency room for reportedly taking pills and making suicidal threats. Mother was then arrested on an existing warrant and banned from returning to the Gateway House for six to twelve months due to drug paraphernalia found in her room. The children were returned to foster care.

¶8    Later that month, the Department's Child and Family Services Division filed a petition in the Thirteenth Judicial District Court for emergency protective services, adjudication as youths in need of care (YINC), and temporary legal custody for the four children. As required by ICWA, notice of the involuntary child custody proceedings was sent to the Tribes. 25 U.S.C. § 1912(a). On September 9, 2009, the District Court appointed one attorney to be both the guardian ad litem (GAL) and legal counsel for the children, pursuant to §§ 41-3-112 and -425(2)(b), MCA (2009), and ordered the assignment of counsel to Mother and Father, pursuant to § 41-3-425(2)(a), MCA (2009). The District Court granted emergency protective services for the children and set a show

3

cause hearing. In March 2010, the Tribes filed a Notice of Appearance and Intervention to assist the court in its deliberations and reserve its right to move for a transfer of jurisdiction if necessary. The court granted the Tribes' motion to appear at the hearings telephonically.

¶9 On May 6, 2010, Mother moved to transfer the cases to the Fort Peck Assiniboine and Sioux Tribal Court, as allowed under 25 U.S.C. § 1911(b), and neither Father nor the GAL objected. The Tribes advised the District Court that they were seriously considering a transfer of jurisdiction, but they needed more time to make an informed decision. The GAL argued that a delay was not in the best interests of the children, and the District Court, while recognizing this, allowed the Tribes an additional six weeks to file the motion. The Tribes did not file documents for a jurisdictional transfer within the six weeks, so the District Court granted the Department's request to vacate further consideration of the transfer. The District Court acknowledged that the Tribes could still file a motion with the District Court for transfer but noted the Tribes did not seem interested in taking jurisdiction at that point.

¶10 At a hearing on June 17, 2010, all parties except Mother stipulated that the alleged facts were sufficient for the District Court to find that the children had been abused, neglected, or abandoned, that the children were YINC, and that the Department should be given temporary legal custody of the children. Mother was not present at the hearing. Mother had disappeared after being released from custody on other charges, and she failed to maintain contact with anyone. Mother's counsel was present and did not object to the stipulation.

4

¶11 The following month, the District Court found that the children had been exposed to physical neglect, and consequently adjudicated them as YINC, granted the Department temporary legal custody, and ordered a treatment plan for Mother. Again, Mother's attorney did not object. Mother was assigned new counsel in August 2010 but her counsel was unable to contact her. Though the Department attempted to work with Mother and Father towards reunification, the lack of contact with Mother and her absence from hearings, her lack of visitation with the children, and her inability to finish the treatment plan led the Department to work toward termination of parental rights. Moreover, neither Mother nor Father appeared for the subsequent permanency hearing in October.

¶12 At the termination hearing on February 24, 2011, the GAL recommended terminating Mother's and Father's parental rights. Counsel for Mother requested a continuance of the hearing so counsel could be appointed for the children, and the District Court denied the motion, reasoning that Mother had numerous previous opportunities to request counsel for the children, and she had not done so. Additionally, in order to expedite the process for the sake of the children, the court stated it would assume the children wished to be returned to their parents, as the GAL reported that the three older children had expressed that preference and the youngest one was too young to express a preference. The ICWA director for the Tribes testified that the current foster care placements of the children complied with ICWA. She further testified that though the Tribes had made an affirmative decision about transferring the case to tribal

5

jurisdiction, the necessary paperwork had not been done. Again, neither Mother nor Father was present for the hearing.

¶13 The District Court concluded that the children had been adjudicated as YINC, the treatment plan for Mother was appropriate, Mother failed to complete the required treatment plan, and Mother's unfitness was unlikely to change within a reasonable time. The court awarded the Department permanent legal custody after determining that termination was in the best interests of the children.

¶14 Mother appealed. The cases of the four children were consolidated, and this Court appointed independent appellate counsel for the children.

**STANDARD OF REVIEW**

¶15 We review a district court's termination of parental rights for abuse of discretion. *In re R.M.T.*, 2011 MT 164 ¶ 26, 361 Mont. 159, 256 P.3d 935. "A district court abuses its discretion when it 'acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice.' " *R.M.T.*, ¶ 26 (citing *In re J.M.*, 2009 MT 332, ¶ 12, 353 Mont. 64, 218 P.3d 1213). We review findings of fact to determine if they are clearly erroneous and we review conclusions of law for correctness. *In re C.M.C.*, 2009 MT 153, ¶ 19, 350 Mont. 391, 208 P.3d 809. "A district court's application of the law to the facts of a case is a legal conclusion which we review to determine whether the interpretation of the law is correct." *In re C.H.*, 2000 MT 64, ¶ 9, 299 Mont. 62, 997 P.2d 776. We exercise plenary review to determine "whether a parent was denied effective assistance of counsel in termination proceedings." *C.M.C.*, ¶ 20.

**DISCUSSION**

¶16    *Issue One: Did the District Court comply with the jurisdictional ICWA transfer requirements?*

¶17    On appeal, Mother argues that the District Court should have transferred the case to the Tribal Court upon her motion, and it committed jurisdictional error when it did not do so. The State argues that the Tribes were on actual notice of all the state court proceedings, as required by ICWA's notice provisions, and declined the jurisdictional transfer by failing to request a transfer. Further, the State asserts that Mother "anticipated that a tribal court order accepting jurisdiction would be a prerequisite for the transfer of jurisdiction to the Tribes." While ICWA provides for concurrent jurisdiction between state and tribal courts, we conclude that the District Court should have transferred jurisdiction to the Tribal Court, or determined after a hearing that there was good cause not to do so.

¶18    The policy of ICWA is

> to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .

25 U.S.C. § 1902; *see C.H.*, ¶ 11. An "Indian child," as defined by 25 U.S.C. § 1903(4), is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." It is undisputed that the children are Indian children under this definition.

7

¶19    Jurisdiction over Indian child custody proceedings is at the heart of ICWA. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36, 109 S. Ct. 1597, 1601 (1989). Specifically, ICWA provides:

> (a) Exclusive jurisdiction. An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.
>
> (b) Transfer of proceedings; declination by tribal court. In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, that such transfer shall be subject to declination by the tribal court of such tribe.
>
> (c) State court proceedings; intervention. In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding.

25 U.S.C. § 1911(a)-(c).

¶20    Since the case at hand involves Indian children apparently residing in Billings, not on the Tribes' reservation, we apply 25 U.S.C. § 1911(b) to these proceedings. Therefore, upon petition of a parent, the custodian, or the tribe, and unless good cause to the contrary is shown, a parent objects, or the tribal court declines the transfer, the proceedings must be transferred to the jurisdiction of the tribe. 25 U.S.C. § 1911(b). This section "creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation." *Choctaw Indians*, 490 U.S. at 36, 109 S. Ct.

8

at 1602. Consequently, "the extraterritorial jurisdiction of the tribe created by [ICWA] must first be adjudicated" in a transfer hearing before a request for the transfer of jurisdiction can be granted or denied. *In re M.E.M.*, 195 Mont. 329, 335, 635 P.2d 1313, 1317 (1981); *In re G.L.O.C.*, 205 Mont. 352, 356-57, 668 P.2d 235, 237 (1983).

¶21 We look to the guidelines promulgated by the Bureau of Indian Affairs in 1979 to help state courts interpret and apply ICWA. *In re M.B.*, 2009 MT 97, ¶ 16, 350 Mont. 76, 204 P.3d 1242; *see* Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67584-95 (Nov. 26, 1979) [hereinafter Guidelines]. This Court has previously determined that these Guidelines are persuasive and that we will apply them when interpreting ICWA. *M.B.*, ¶ 16; *C.H.*, ¶ 12.

¶22 The Guidelines' commentary regarding petitions for jurisdictional transfers to tribal court states:

> Although [ICWA] does not explicitly require transfer petitions to be timely, it does authorize the court to refuse to transfer a case for good cause. When a party who could have petitioned earlier waits until the case is almost complete to ask that it be transferred to another court and retried, good cause exists to deny the request.

Guidelines, C.1. Commentary, 44 Fed. Reg. at 67590.

¶23 The Guidelines for ruling on 25 U.S.C. § 1911(b) transfer petitions state:

> (a) Upon receipt of a petition to transfer by a parent, Indian custodian or the Indian child's tribe, the court *must* transfer unless either parent objects to such transfer, the tribal court declines jurisdiction, or the court determines that good cause to the contrary exists for denying the transfer.
> (b) If the court believes or any party asserts that good cause to the contrary exists, the reasons for such belief or assertion shall be stated in writing and made available to the parties who are petitioning for transfer. The petitioners shall have the opportunity to provide the court with their views on whether or not good cause to deny transfer exists.

9

Guidelines, C.2. Criteria and Procedures for Ruling on 25 U.S.C. § 1911(b) Transfer

Petitions, 44 Fed. Reg. at 67590-91 (emphasis added).

¶24     Regarding a tribal court's declination of transfer, the Guidelines state:

> (a)  A tribal court to which transfer is requested *may* decline to accept such transfer.
> (b)  Upon receipt of a transfer petition the state court shall notify the tribal court in writing of the proposed transfer.  The notice shall state how long the tribal court has to make its decision.  The tribal court shall have at least twenty days from the receipt of notice of a proposed transfer to decide whether to decline the transfer.  The tribal court may inform the state court of its decision to decline either orally or in writing.

Guidelines, C.4. Tribal Court Declination of Transfer, subsections (a)-(c), 44 Fed. Reg. at

67592 (emphasis added).   The associated commentary used to explain that the prior

Guidelines "provided that the state court should presume the tribal court has declined to

accept jurisdiction unless it hears otherwise."   Guidelines, C.4. Commentary, 44 Fed.

Reg. at 67592.  The Guidelines were revised in 1979, however, and now require

> *the tribal court to decline the transfer affirmatively if it does not wish to take the case. . . .*   The language in [ICWA] providing that transfers are "subject to declination by the tribal court" indicates that affirmative action by the tribal court is required to decline a transfer.

Guidelines, C.4. Commentary, 44 Fed. Reg. at 67592 (emphasis added).

¶25     An important distinction we recognize is the difference between "Indian tribe" and

"tribal court."  *See In the Interest of Shawnda G.*, 634 N.W.2d 140, 145 n. 8 (Wis. App.

2001).   They are separate entities, and are separately defined by ICWA.   25 U.S.C.

§ 1903(8), (12).  " 'Indian tribe' means any Indian tribe, band, nation, or other organized

group or community of Indians recognized as eligible for the services provided to Indians

10

by the Secretary because of their status as Indians." 25 U.S.C. § 1903(8). " '[T]ribal court' means a court with jurisdiction over child custody proceedings and which is either a Court of Indian Offenses, a court established and operated under the code or custom of an Indian tribe, or any other administrative body of a tribe which is vested with authority over child custody proceedings." 25 U.S.C. § 1903(12).

¶26    As indicated in *In the Interest of C.Y.*, 925 P.2d 447 (Kan. App. 1996), "[i]t is the *tribe* which has the right to intervene under 25 U.S.C. § 1911(c), and it is the tribal *court* which must decline to exercise jurisdiction over a case transferred to it under § 1911(b)." *C.Y.*, 925 P.2d at 449 (emphasis in original). Under the clear language of § 1911(b) and as explained in the Guidelines, the district court, upon petition of either parent, *shall* transfer the proceeding to the jurisdiction of the tribe, absent circumstances not present here. If the tribal court decides not to accept jurisdiction, it is incumbent on the tribal court to affirmatively decline the transfer. It is the tribal court, and not the Tribes, which must decline the transfer of jurisdiction in order for the state court to thereafter proceed. Because the Tribal Court did not affirmatively decline to receive this case, it remains ripe for transfer from the District Court to the Tribal Court.

¶27    In *Shawnda G.*, the court recognized that "[t]he guidelines indicate that once a state court is asked to transfer jurisdiction, the court has an obligation to ascertain whether the tribal court is declining jurisdiction." *Shawnda G.*, 634 N.W.2d at 145. The circuit court must "first ascertain whether the tribal court will accept jurisdiction. If the tribal court indicates that it will accept jurisdiction, then the circuit court must transfer jurisdiction unless it determines that good cause exists for denying the transfer."

11

*Shawnda G.*, 634 N.W.2d at 146. The trial court therefore must transfer the case to tribal court unless it either "obtain[s] a declination of jurisdiction from the *tribal court* or make[s] a finding that good cause exists not to transfer the case to the tribal court." *C.Y.*, 925 P.2d at 449 (emphasis in original).

¶28 For a jurisdictional transfer to be precluded for good cause, the State must provide "clear and convincing evidence that the best interests of the child would be injured by such a transfer." *In re T.S.*, 245 Mont. 242, 245, 801 P.2d 77, 79 (1990) (citing *M.E.M.*, 195 Mont. at 336, 635 P.2d at 1317). In the case at hand, the issue of good cause was never reached, so we need not further address this exception.

¶29 We conclude that the District Court misinterpreted the ICWA requirement to require an affirmative acceptance of the transfer by the *Tribes*. Instead, an affirmative declination of the transfer by the *Tribal Court* was required, and this did not occur. Mother petitioned for a transfer early in the proceedings, no one objected to Mother's petition, and the State did not argue good cause existed so as to preclude the transfer to the Tribal Court. The Guidelines provide that "[u]pon receipt of a transfer petition the state court shall notify the tribal court in writing of the proposed transfer" and the tribal court then has at least twenty days to decide whether to accept or decline the transfer. Guidelines, C.4. Tribal Court Declination of Transfer, subsection (b), 44 Fed. Reg. at 67592. However, the state court notified the Tribes, not the Tribal Court, and as we have already stated, these are separate entities. We therefore conclude that under the clear language of 25 U.S.C. § 1911 and the Guidelines, the District Court was obligated to obtain a declination of jurisdiction from the Tribal Court, or make a finding that good

12

cause existed not to transfer the case to the Tribal Court. Because neither course of action was taken, we must reverse and remand in order that the requisites of ICWA may be met.

¶30 Finally, the District Court must hold a jurisdictional transfer hearing before it can grant or deny a request for a jurisdictional transfer of Indian children to tribal custody. *G.L.O.C.*, 205 Mont. at 356-57, 668 P.2d at 237. Mother filed her motion to transfer jurisdiction to the Tribal Court on May 6, 2010, and all parties were willing to transfer the case at that time. However, the State changed its position by the June 17 hearing and sought to vacate the transfer of jurisdiction hearing portion of the case. While Mother argues that these two hearings were sufficient to satisfy the procedural requirement of holding a transfer hearing and that a new transfer hearing is unnecessary, we decline to make that determination.

¶31 We therefore reverse the District Court's conclusion as to the jurisdictional ICWA transfer requirements and remand so that jurisdiction may properly be determined according to our findings and a transfer hearing may be held.

¶32 *Issue Two: Did the District Court err in failing to appoint counsel for the children?*

¶33 On appeal, Mother argues for the first time that the District Court was required to appoint counsel for the children, as statutorily mandated by § 41-3-425(2)(b), MCA (2009), and constitutionally mandated by the Montana Constitution, Article II, Sections 15 and 17. She further maintains that the GAL was not legal counsel for the children, and that these errors require reversal. The children argue the same, and emphasize the

13

necessity of protecting their liberty interests. The State, while recognizing that the District Court was required to immediately appoint or assign counsel for the children under § 41-3-425(2)(b), MCA (2009), argues that the District Court adequately complied with the mandate by appointing an attorney as both a GAL and legal counsel for the children.

¶34 We conclude that in light of our reversal of the decision terminating Mother's and Father's parental rights to the children and remand for further proceedings under ICWA, we need not address whether the District Court erred by failing to appoint counsel for the children. However, we do note an apparent conflict between the children's wishes and what the GAL concluded to be in the children's best interests. Because the children's wishes and their best interests will once again be at issue, we direct the court to appoint counsel for the children on remand.

¶35 Finally, Mother argues that her constitutional right to due process was violated because her counsel failed to advocate for her during the adjudicatory hearing. Because we are reversing and remanding this case for further proceedings, we deem it unnecessary to reach this issue.

## CONCLUSION

¶36 For the foregoing reasons, we reverse and remand for further proceedings consistent with this Opinion.

/S/ PATRICIA COTTER

14

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ JIM RICE