DA 11-0588

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 65N

IN THE MATTER OF:

A.H.,

     A Youth in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN-09-055
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Elizabeth Thomas, Attorney at Law, Missoula, Montana

     For Appellee:

     Steve Bullock, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

     Scott J. Pederson, Assistant Attorney General, Child Protection Unit, Billings, Montana

     For Youth Appellee:

     Judy A. Williams, Goodrich Law Firm, P.C., Billings, Montana

Submitted on Briefs:  February 22, 2012

Decided:  March 13, 2012

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 T.M. is A.H.'s biological mother and J.H. is her biological father. On August 9, 2009, T.M. and J.H. were under the influence of drugs and alcohol when four-year-old A.H. was discovered unattended. On August 10, 2009, the Department of Health and Human Services, Child and Family Services Division (Department or Child Services) removed A.H. from her parents' home based upon allegations of physical neglect. The Department subsequently obtained temporary legal custody of the child. A.H. was adjudicated a youth in need of care. The parents were appointed counsel and a guardian ad litem (GAL) was appointed for A.H.

¶3 In January 2010, due to the parents' chemical dependency issues, the case was transferred to the Drug Treatment Court Program (Drug Program). Both parents were inducted into the program. Treatment plans were developed and approved for T.M. and J.H. In May 2010, the District Court extended temporary legal custody to the Department. In August 2010, the Department moved for a permanency hearing stating that family reunification remained the goal. The parents stipulated to the permanency plan; therefore, no permanency hearing was held. In October 2010, the case was moved

2

from Drug Court back to the District Court. In November 2010, the Department moved for permanent legal custody of A.H. and termination of both parents' rights, claiming the parents' treatment plans had been unsuccessful and the conditions preventing the parents from providing adequate parental care to A.H. remained. The District Court held a three-day hearing in July 2011. Also in July 2011, J.H. voluntarily relinquished his parental rights to A.H. upon condition that T.M.'s rights were terminated. In September 2011, the District Court terminated T.M.'s parental rights. She appeals. We affirm.

## ISSUE

¶4      Did the District Court abuse its discretion in terminating T.M.'s parental rights?

## STANDARD OF REVIEW

¶5      We review a district court's termination of parental rights for an abuse of discretion. *In re J.W.C.*, 2011 MT 312, ¶ 15, 363 Mont. 85, 265 P.3d 1265. Section 41-3-609(1)(f)(i), MCA, authorizes a district court to terminate a parent's rights if it finds by clear and convincing evidence that the child has been adjudicated a youth in need of care, an appropriate treatment plan has not been complied with or has been unsuccessful, and the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time. The court must also consider the best interest of the child. *In re Matter of E.K.*, 2001 MT 279, ¶ 56, 307 Mont. 328, 37 P.3d 690.

## DISCUSSION

¶6      A.H. has been outside of her mother's care since August 2009. During this time, T.M. has been in the Drug Court program, Intensive Outpatient treatment, and various therapeutic treatment programs. She was expelled from some programs for lack of

3

cooperation and progress. She has also been incarcerated. At the time of the hearing in July 2011, T.M. was incarcerated at Passages, a community correctional program.

¶7 Meanwhile, A.H. was first placed with an aunt and then into non-family foster care upon allegations of abuse to A.H. by another child in the aunt's house. After foster care, A.H. was placed with her maternal grandfather and his wife where, at the time of the hearing, she had been residing for approximately seven months. A.H.'s grandfather and step-grandmother have agreed to adopt A.H. in the event T.M.'s parental rights are terminated. A.H.'s counselors acknowledge that while A.H. is very bonded with her mother, she is doing very well in the care of her grandparents.

¶8 At the July 2011 hearing, the District Court heard testimony from numerous specialists who have worked with T.M. during the past two years, including two addiction counselors, her probation and parole officer, a visitation specialist with Family Support Network, and a child protection specialist with the Department. T.M. and her father also testified. During the three-day hearing, the District Court heard conflicting testimony from witnesses.

¶9 Some witnesses testified that the first year and a half of T.M.'s treatment was riddled with numerous setbacks and failures. In addition to being diagnosed with serious mental illness, she was frequently angry, disruptive and uncooperative during therapy sessions. As a result she was expelled from some programs. However, both she and her Passages' addiction counselor testified that her progress improved once she entered Passages in January 2011. She was six months into the Passages program at the time of the hearing.

4

¶10 We have repeatedly held that when presented with conflicting evidence it is the district court's role to weigh and resolve such conflicts and to judge the credibility of witnesses. *Grice v. Price (In re A.P.P.)*, 2011 MT 50, ¶ 11, 359 Mont. 386, 251 P.3d 127 (citations omitted). Here, the District Court was fully engaged in the hearing, asking relevant questions of various witnesses. We must presume that the court carefully weighed the conflicting evidence in reaching its decision. Ultimately, the court found that T.M. had not satisfied numerous requirements of her court-approved treatment plan and that the condition rendering her unable to safely parent her child was not likely to change in a reasonable time. Furthermore, based upon testimony that A.H. needed permanence and stability and should not have to wait another year or longer to see how T.M.'s treatment progressed, the court concluded that termination of T.M.'s parental rights was in A.H.'s best interest. These findings are supported by the evidence and the conclusions based upon them are correct.

¶11 We also note, as did the District Court during the hearing, that termination of T.M.'s rights does not mean that she cannot have an ongoing relationship with A.H., providing she remains drug and alcohol-free. T.M.'s father testified that once T.M. completed treatment she would be allowed generous visitation and participation in A.H.'s life. He stated however that as A.H.'s adopted parent, he would protect A.H. and deny T.M. access to the child should T.M.'s mental health diminish or she relapses into substance abuse. This arrangement should provide T.M. with strong incentive to continue the healing process she appears to have started in Passages. While we appreciate the positive strides T.M. may have made since she began treatment at

Passages, we cannot say the District Court abused its discretion in terminating T.M.'s parental rights based upon the reasons set forth above.

¶12     We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions.  The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted. Furthermore, there was no abuse of discretion.

¶13     We affirm.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ BRIAN MORRIS