CHIEF JUSTICE McGRATH,
dissenting.
¶45 I dissent as to Issue 1.1 would not reach the remaining issues and would remand this case with instructions to grant the Tribe’s motion to transfer jurisdiction to the Blackfeet Tribal Court.
¶46 Congress enacted the Indian Child Welfare Act of1978 (ICWA) to address the widespread concern over the removal of Indian children from their families. Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 32, 109 S. Ct. 1597, 1600 (1989). Testimony at the Congressional hearings emphasized the significant impact that removal of Indian children has on the tribe’s role as a sovereign community, as well as the future of Native American society and heritage. Holyfield, 490 U.S. at 34, 109 S. Ct. at 1601 (citations omitted). ICWA espressos a “clear preference for keeping Indian children with their families, deferring to tribal judgment on matters concerning the custody of tribal children, and placing Indian children who must be removed from their homes within their own families or Indian tribes.” In re C.H., 2000 MT 64, ¶ 13, 299 Mont. 62, 997 P.2d 776 (citing 44 Fed. Reg. 67, 585-86 (Nov. 26, 1979)). Federal regulations, guidelines, and any rules or statutes governing ICWA should be liberally construed in favor of the preferences. 44 Fed. Reg. 67, 586; In re C.H., ¶ 13.
¶47 As the Court correctly notes (Opinion, ¶ 23), this case implicates 25 U.S.C. § 1911(b), which provides for presumptively tribal, but *407 concurrent state, jurisdiction. Under § 1911(b), the State bears the burden of establishing “good cause” to block a transfer to tribal court. 44 Fed. Reg. 67, 591; see also In re J.W.C., 2011 MT 312, ¶ 28, 363 Mont. 85, 265 P.3d 1265. Although “good cause” is not defined in ICWA, the Bureau of Indian Affairs Guidelines for State Courts (“Guidelines”) provide guidance to state courts. Good cause may exist if “the proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing.” 44 Fed. Reg. 67, 591.
¶48 The purpose of the “advanced stage” rule is to avoid improper manipulation of the system. The Guidelines note that a party should not be permitted to use transfer as a “tactic to wear down the other side by requiring the case be tried twice.” 44 Fed. Reg. 67, 590. While the Act allows intervention at any point in the proceeding, this guideline suggests that a parent whose rights have been terminated should not be permitted to transfer jurisdiction after the fact.
¶49 I disagree with the majority’s analysis of the “advanced stage” guideline. The State filed its termination petition on March 6, 2013. The Tribe, having intervened early in the case, moved to transfer jurisdiction on April 10,2013, thirty-five days later. The District Court order faulted the Tribe for seeking transfer after “all the critical court proceedings [were] completed and decisions made,” yet the District Court had not conducted a hearing nor made a decision to terminate the parents’ rights. The hearing was not held until September 10, 2013, and the order of termination was not signed until January 15, 2014, eight months after the motion to transfer was filed. This situation does not implicate the dangers the “advanced stage” rule is designed to protect against and there is no indication of manipulation by any party.
¶50 The majority opinion purports to concur with the Tribe that the case was not at an advanced stage (Opinion, ¶ 28); however, the majority later faults the Tribe for not acting earlier, noting that the case “had significantly advanced by the time the Tribe filed its motion.” (Opinion, ¶ 29). Blaming the Tribe for not seeking transfer earlier, when problems with the parents were “readily apparent” (Opinion, ¶ 29), ignores the interests the Tribe sought to protect. The Tribe intervened early in this case, but did not move to transfer until it became clear that the plan to reunite the family would not be accomplished. When it became apparent that the Indian family relationship would likely be terminated, the Tribal interest in adjudicating the case became more significant, as its interest in retaining the child in the Blackfeet community and culture became *408 more critical. This concern was not present prior to the State’s motion to terminate the parents’ rights. In my view, the good cause standard is not satisfied by the delay in this case.
¶51 In Montana, courts must consider the best interest of the child in its determination of “good cause.” In re T.S., 245 Mont. 242, 247, 801 P.2d 77, 80 (1990). However, the “best interest” test used in the ICWA context differs from the “best interest” test used in custody determinations and termination of parental rights cases. In re T.S., 245 Mont, at 247, 801 P.2d at 80 (1990); see also In re C.H., ¶ 29. ICWA “expresses the presumption that it is in an Indian child's best interests to be placed in accordance with the statutory preferences.” In re C.H., ¶ 29 (citations omitted).
¶52 The State bears the burden of establishing that a transfer to the tribal court would be against the child’s best interest as considered by ICWA. In re T.S., 245 Mont, at 245,801 P.2d at 79. Here, however, the District Court improperly shifted the burden to the Tribe, stating:
that’s the burden I see on the tribe, when we start talking- what’s the best interest of the child under the ICWA Act. There’s no question that the priority for protecting the Indian heritage is very high. But, we, also, have the emotional wellbeing of the child, that probably has priority, and that’s the burden I see on the Blackfeet Tribe, right now.
¶53 As we stated in In re Marriage of Skillen, “ICWA indicates that regardless of the child's residence, tribal courts are uniquely and inherently more qualified than state courts to determine custody in the best interests of an Indian child.” 1998 MT 43, ¶ 39,287 Mont. 399,956 P.2d 1 {overruled, in part, on other grounds by Big Spring v. Conway, 2011 MT 109, 360 Mont. 370, 255 P.3d 121). There is no reason to believe that the Blackfeet Tribal Court would not fulfill its obligation to S.B.C. and determine what is in his best interest. The decision to deny the transfer to tribal court reflects an ethnocentric belief that state courts are better situated to determine the best interests of the Indian child and ignores the policy set by the ICWA.
¶54 Certainly, the foster mother must be commended for her generosity and willingness to welcome children into her home. However, the majority ignores the distinct cultural difference between native communities, the child’s interest in being raised in his own culture, and the Blackfeet Tribe’s interest in educating its own children. Moreover, there is no reason to assume that the Tribal Court would automatically discontinue the child’s current placement. The Tribal Court would necessarily need to examine the same factors in deciding the child’s best interest as the state court did.
*409 ¶55 Finally, I agree with the majority that the District Court’s repeated statements that the Tribe “sat on its hands” until it had a financial reason to seek jurisdiction were inappropriate. The BIA Guidelines specifically provide that a state court cannot base the “good cause” determination on “socio-economic conditions and the perceived adequacy of tribal social services or judicial system.” 44 Fed. Reg. 67,591. These statements reflect, at best, a refusal to comply with the Guidelines and, at worst, a strong bias against the Tribe and the Tribal judicial system. Such statements have no place in the District Court’s order and were highly inappropriate.
¶56 For these reasons, I dissent. The State did not cany its burden of establishing good cause to block the presumptive jurisdiction in favor of the tribal court. The District Court abused its discretion when it failed to grant the Tribe’s request to transfer jurisdiction. On remand, the District Court should grant the Tribe’s motion to transfer jurisdiction to the Blackfeet Tribal Court.
JUSTICE BAKER and JUSTICE SHEA join in the dissenting Opinion of CHIEF JUSTICE McGRATH.